# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No. 07 CR 5 |
| ) | |
| ARENDA TROUTMAN, STEVEN BOONE, ) | Judge Ruben Castillo |
| and VINCENT GILBERT, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This case stems from alleged illegal activities conducted by Defendant Arenda Troutman ("Troutman") during her terms as alderman for the City of Chicago's 20th Ward from 1992 until May 2007. The government charges that Troutman did not conduct her illegal activities alone, but enlisted her co-Defendants Steven Boone ("Boone") and Vincent Gilbert ("Gilbert") to assist her. Gilbert filed a motion to sever his trial from the other two defendants on the grounds that he was improperly joined under Federal Rule of Criminal Procedure 8(b), or, in the alternative, that joinder is prejudicial under Federal Rule of Criminal Procedure 14. (R. 57, Mot. to Sever.)

## PROCEDURAL HISTORY

On June 13, 2007, the government issued a one-count indictment against Troutman, alleging that she solicited and accepted cash from certain individuals in return for her support in those individuals' pursuit of various City permits, in violation of 18 U.S.C. § 666(a)(1)(B). (R. 22.) A month later, on July 11, 2007, the government issued a fifteen-count Superseding Indictment, adding Defendants Boone and Gilbert. (R. 27, Super. Indictment.) Gilbert filed his motion to sever on August 29, 2007 (R. 57), supplemented by two memoranda in support of his motion to sever (R. 86, 131) and a sur-reply (R. 139). The government filed a consolidated

response to all of Gilbert's pre-trial motions, including the motion to sever (R. 104), as well as a supplemental response to Gilbert's motion to sever (R. 135). On the last page of its supplemental response, the government stated that it was in the process of re-presenting evidence to a grand jury and intended to seek the return of a second superseding indictment clarifying the existing charges, but not adding new charges, new conduct, nor additional defendants. (R. 135, Gov't Supp'l Resp. at 5.) The Court has delayed ruling on Gilbert's severance motion until after the government filed the Second Superseding Indictment. The Second Superseding Indictment was filed on April 3, 2008. (R. 142.)

## THE SECOND SUPERSEDING INDICTMENT

According to the Second Superseding Indictment, Troutman served as the Alderman for the City of Chicago's (the "City") 20th Ward from approximately 1992 until May 2007. (R. 142, Indictment ¶ 1a.) Defendant Boone worked for Troutman and was paid by the City as a member of Troutman's aldermanic staff. (*Id.* ¶ 1e.) Defendant Gilbert is described as "an acquaintance of Arenda Troutman." (*Id.* ¶ 1f.) Count One charges that beginning in or around early 2002, and continuing to in or about January 8, 2007, Defendants Troutman and Boone, "together with Vincent Gilbert and others known and unknown knowingly devised and participated in a scheme to defraud Chicago and its citizens of the intangible right to the honest services of defendant Arenda Troutman, and to obtain money and property by materially false and fraudulent pretenses and representations and material omissions . . ." (*Id.* ¶ 2.) Specifically, the Indictment alleges that Troutman:

> used her official position as the Alderman of the 20th Ward to solicit, directly and with and through others, and to obtain, for the benefit of herself and others, including defendant STEVEN BOONE and Vincent Gilbert, with their knowledge

2

and participation, payments and other things of value from persons who were involved in real estate work, with the implicit and explicit understanding that, without such payments and other things of value, her support for land use requests, zoning changes, alley access, sale of City-owned real estate, and other requests that required local government action would either not be forthcoming or would be delayed.

(*Id.* ¶ 3 (emphasis in original).) The persons allegedly solicited in this scheme include those identified as Individuals A, B, C, D, E, F, G, H, and I. (*Id.* ¶¶ 4-35, 40.)

Defendant Gilbert, while not accused in the alleged fraudulent scheme, is alleged to have worked with Troutman to illegally solicit money and partnerships from real estate developers Individuals H and I.[1] (*Id.* ¶ 40.) The alleged solicitation of Individual H occurred in December 2005 regarding a residential building project along 63rd Street, but the Indictment provides no detail as to Gilbert's involvement with Individual H. (*Id.* ¶¶ 34-35, 40.) The alleged solicitation of Individual I occurred in late 2004 or early 2005, when Troutman "indicated, directly and indirectly, that she would support a particular real estate project of Individual I only if Individual I worked on the project with Gilbert." (*Id.* ¶¶ 34, 40.) Gilbert allegedly presented Individual I with a consulting contract whereby Individual I would pay Gilbert a $5,000 retainer, but according to the Indictment, they did not enter into the contract at that time. (*Id.* ¶ 41.)

Subsequently, on or about July 1, 2005, as part of his cooperation with the government, Individual I entered into the consulting contract with Gilbert and paid him a $5,000 fee. (*Id.*) At that time, Gilbert allegedly told Individual I, "when I'm happy, the Alderman's happy. I'm happy now because she actually directed at me to you so I never thought it would be like pulling teeth." (*Id.* ¶ 42.) Individual I, however, allegedly refused to make Gilbert a partner on a real

---

[1] In the earlier indictment, the government charged that Gilbert was involved only in the solicitation of Individual I.

3

estate project, and Gilbert responded "I can make this project go, otherwise I think this project is in jeopardy." (*Id.* ¶ 43.) Nevertheless, Gilbert allegedly made a presentation to Troutman and her economic development board on behalf of Individual I, but they did not support Individual I's real estate project. (*Id.* ¶ 44.) When Individual I expressed displeasure with Gilbert, Gilbert allegedly warned Individual I, "don't piss me off because you still have property . . . in that ward." (*Id.*) Individual I then allegedly asked Gilbert to arrange a meeting with Troutman to discuss the project. (*Id.*) At a meeting that occurred in early December 2005, Troutman allegedly told Individual I that his relationship with Gilbert "didn't seem to work out," and suggested that Troutman's brother could work with Individual I, "[a]nd then, I'm paid through him, see?" (*Id.* ¶ 45.) In February 2006, at a meeting between Individual I and Troutman's staff, Individual I allegedly resisted making Troutman's brother a partner on the real estate project, preferring to pay a "consulting fee" instead. (*Id.* ¶ 46.)

Although only charging Troutman in Count One, the government alleges that "defendants ARENDA TROUTMAN and STEVEN BOONE, Vincent Gilbert and others known and unknown did misrepresent, conceal, hide and cause to be misrepresented, concealed and hidden, the purposes of and acts done in furtherance of the scheme." (*Id.* ¶ 47.) In Count One, Troutman is charged with a violation of 18 U.S.C. §§ 1341 and 1346. (*Id.* ¶ 48.) Section 1341 criminalizes use of the mail to further any "scheme or artifice to defraud." 18 U.S.C. § 1341. Section 1346 defines "scheme or artifice to defraud" as including "a scheme or artifice to deprive another of the intangible right of honest services." 18 U.S.C. § 1346. The Indictment alleges that on February 23, 2004, Troutman mailed an envelope containing a court order staying the demolition of property at 6417 S. Maryland Ave., in violation of these statutes. (R. 27, Indictment ¶ 48.)

4

The allegations in the rest of the Second Superseding Indictment stretch from July 2002 to January 2007. Counts Two and Three of the Indictment charge Troutman with violating 18 U.S.C. §§ 1341 and 1346 during two mail transactions. Count Four charges Troutman and Boone with violations of the mail fraud statutes and 18 U.S.C. § 2.[2] Count Five charges Boone with violating 18 U.S.C. § 666(a)(1)(B) by corruptly soliciting and accepting approximately $8,000 from Individual A in return for his help in securing a building permit regulation for Individual A.[3] Troutman and Boone are charged together in Count Six with violating Section 666(a)(1)(B) by soliciting and accepting items of approximately $12,000 value from Individual A as a reward for assisting in the procurement of a zoning change. Troutman is charged in Counts Eight and Nine with violations of Section 666(a)(1)(B), for corruptly soliciting, demanding, and accepting cash from Individual D in connection with securing permission for alley access to certain property for Individuals D and E. Troutman is also charged in Counts Seven, Ten, and Eleven with violations of 18 U.S.C. § 1951 for committing extortion by obtaining cash "induced under color of official right, and by the wrongful use of fear of economic harm" from Individuals D, G, and F.[4] Count Thirteen charges Troutman with violating 26 U.S.C. § 7206(1) by failing to

---

[2] 18 U.S.C. § 2 states that whoever commits or causes to be committed "an offense against the United States or aids, abets, counsels, commands, induces or procures its commission" is punishable as a principal.

[3] 18 U.S.C. § 666(a)(1)(B) sets forth the punishment for an agent of local or state government who corruptly solicits or demands for the benefit of any person, or accepts or agrees to accept, anything of value of $5,000 or more from any person, intending to be influenced or rewarded in connection with any government business or transaction.

[4] Section 1951 defines "extortion" as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right," and punishes those who obstruct, delay, or affect commerce through such action. 18 U.S.C. § 1951(a), (b)(2).

5

report $10,000 in "Other Income" on her federal Income Tax Return and for misrepresenting her total income to the IRS. Count Fourteen charges Boone with violating 18 U.S.C. § 1001(a)(2) by knowingly and willfully making false and fraudulent statements in a matter within the jurisdiction of the FBI. In Count Fifteen, Troutman is charged with knowingly making a false statement to LaSalle Bank to influence the bank to approve a refinancing mortgage loan, in violation of 18 U.S.C. § 1014. In addition, the Second Superseding Indictment includes a forfeiture allegation against Troutman and Boone.

Gilbert is only charged in Count Twelve of the Second Superseding Indictment. Count Twelve charges Troutman and Gilbert with violating 18 U.S.C. § 1951 (the "Hobbs Act") and 18 U.S.C. § 2 by committing extortion, "[b]eginning in approximately late 2004 or early 2005 and continuing until approximately early 2006." (R. 142, Second Super. Indictment, Count Twelve.) They are alleged to have attempted to obtain $5,000 from Individual I "as part of a financial arrangement related to real estate development projects . . . induced under color of official right, and by the wrongful use of fear of economic harm."[5] (*Id.*)

## ANALYSIS

Defendant Gilbert now moves to sever his trial from the trial of Troutman and Boone pursuant to Federal Rules of Criminal Procedure 8 or 14. (R. 57, Mot. to Sever.)

I. **Federal Rule of Criminal Procedure 8(b)**

Federal Rule of Criminal Procedure 8(b) permits an indictment to join two or more defendants "if they are alleged to have participated in the same act or transaction, or in the same

---

[5] This charge differs from Count Twelve of the preceding Superseding Indictment, which alleged that "[i]n approximately July 2005," Troutman and Gilbert committed extortion by obtaining $5,000 from Individual I. (R. 27, Super. Indictment, Count Twelve.)

series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count." Fed. R. Crim. P. 8(b); *see also United States v. Smith*, 223 F.3d 554, 573 (7th Cir. 2000). In assessing whether joinder is proper, the Court looks solely to the face of the indictment. *United States v. Lanas*, 324 F.3d 894, 899 (7th Cir. 2003). For defendants to be charged together, the acts or transactions alleged in the indictment must have occurred "pursuant to a common plan or scheme." *Id.* Rule 8(b) is to be construed "broadly to allow liberal joinder in order to enhance judicial efficiency." *United States v. Stillo*, 57 F.3d 553, 557 (7th Cir. 1995).

Gilbert argues that he was improperly joined in the Indictment because he is only charged with one of the fifteen counts in the Indictment, and he is not charged with the fraudulent scheme alleged in Count One, which Gilbert argues means his alleged acts did not occur pursuant to a common plan or scheme with Troutman and Gilbert. (R. 57, Mot. to Sever at 2.) "In asserting misjoinder under Rule 8(b), there is a presumption that participants in a conspiracy or other criminal schemes should be tried together, not only to economize on judicial and prosecutorial resources but also to give the jury a fuller picture of the scheme." *United States v. Phillips*, 239 F.3d 829, 838 (7th Cir. 2001) (internal citations omitted). While Gilbert is not charged in the alleged fraudulent scheme charged in Count One, the Second Superseding Indictment alleges that the crime charged against Gilbert in Count Twelve is a part of Troutman and Boone's alleged five-year fraudulent scheme. (R. 142, Second Super. Indictment, Count One.) This is sufficient to satisfy the "liberal joinder" standard of Rule 8(b), as the Second Superseding Indictment alleges that Gilbert participated in part of "the same series of acts or transactions" as Troutman and Boone.

## II. Federal Rule of Criminal Procedure 14(a)

Even if joinder was appropriate under Rule 8(b), Gilbert argues that this Court should sever the trial pursuant to Federal Rule of Civil Procedure 14. (R. 57, Mot. to Sever at 2-3.) *See United States v. Garner*, 837 F.2d 1404, 1412 (7th Cir. 1987) ("Once the Rule 8 requirements are met by the allegations in the indictment, severance thereafter is controlled entirely by Federal Rule of Criminal Procedure 14."). Rule 14 provides: "If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). "This Rule must be read against the backdrop of Rule 2, which provides that the Federal Rules of Criminal Procedure 'are intended to provide for the just determination of every criminal proceeding. They shall be construed to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay.'" *United States v. Andrews*, 754 F. Supp. 1161, 1170 (N.D. Ill. 1990) (quoting Fed. R. Crim. P. 2).

The trial court has broad discretion to grant or deny a motion for severance. "Rule 14 leaves the determination of risk of prejudice and any remedy that may be necessary to the sound discretion of the district courts." *United States v. Rollins*, 301 F.3d 511, 517-18 (7th Cir. 2002) (internal citations and quotations omitted). The Supreme Court has instructed that "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). In determining whether a joint trial appears to prejudice a defendant under Rule 14, the Court

8

traditionally looks to whether any of the following factors exist: (1) antagonistic defenses conflicting to the point of being irreconcilable and mutually exclusive; (2) massive and complex evidence making it almost impossible for the jury to separate evidence as it relates to each defendant when determining each defendant's innocence or guilt; (3) a co-defendant's statement inculpating the moving defendant; and (4) gross disparity in the weight of the evidence against the defendants. *United States v. Clark*, 989 F.2d 1490, 1499 (7th Cir. 1993).

Gilbert argues that this Court should sever his trial from that of Troutman and Boone for several reasons, but the most serious risk of prejudice stems from possible statements by Troutman inculpating Gilbert and the fear of a "spillover" effect at a joint trial, where the jury will hear a great deal of evidence that may not be admissible against Gilbert if he were tried alone. (R. 86, Mem. in Supp. of Mot. to Sever at 6-7.) This poses a danger that the jury may be prevented from making a reliable judgment about Gilbert's guilt or innocence. *Zafiro*, 506 U.S. at 539. While the government maintains that limiting instructions at trial will adequately avoid jury confusion, the Supreme Court recognized a narrow exception to the principle that jurors can follow the Court's instructions when one defendant's confession accuses a co-defendant, but the declarant will not testify and thus cannot be cross-examined. *United States v. Hoover*, 246 F.3d 1054, 1058 (7th Cir. 2001) (citing *Bruton v. United States*, 391 U.S. 123 (1968)). When one defendant's statement inculpates a co-defendant in this way, *Bruton* holds that admitting that statement at trial violates the confrontation clause of the Sixth Amendment. *Id.*

Although the government has not yet indicated what statements it intends to use at trial, the government argues that any statements by Troutman incriminating Gilbert would be admissible under Federal Rule of Evidence 801(d)(2)(E), which defines "a statement by a

9

coconspirator of a party during the course and in furtherance of the conspiracy" as admissible nonhearsay. (R. 104, Gov't Consolidated Resp. at 11.) The government has not alleged a conspiracy in this case, but it need not charge criminal conspiracy in order to invoke the evidentiary co-conspirator exception. *United States v. Cox*, 923 F.2d 519, 526 (7th Cir. 1991). Nevertheless, as a predicate to admissibility, the statements must have been made during the course of and in furtherance of the conspiracy. *Id.*

In this case, the Second Superseding Indictment attempts to cast Gilbert as an "unindicted co-schemer" by charging Troutman and Boone "together with Vincent Gilbert and others known and unknown," with having "knowingly devised and participated in a scheme to defraud Chicago and its citizens" between early 2002 and January 8, 2007. (R. 142, Second Super. Indictment ¶ 2.) Besides the allegations that Gilbert participated in the illegal solicitation of Individual I in July 2005, however, the Second Superseding Indictment provides only a bare-bones connection tying Gilbert to Troutman and Boone's alleged five-year scheme. There would be a serious risk of prejudice to Gilbert at a joint trial if this Court had to make a statement by statement determination as to whether *Bruton* bars a statement or Rule 801(d)(2)(E) permits it, and limiting instructions may not serve as an adequate substitute for Gilbert's constitutional right of cross-examination in that situation. *See Hoover*, 246 F.3d at 1059 (citing *Bruton*, 391 U.S. at 135-36).

Furthermore, Gilbert has shown that the the gross disparity in the weight of the evidence against Gilbert and his co-Defendants is likely to prejudice Gilbert despite limiting instructions that the Court would give. *See Clark*, 989 F.2d at 1499. (R. 86, Mem. in Supp. of Mot. to Sever at 9.) Unlike in a conspiracy case, much of the evidence that will be presented at trial against Troutman and Boone may not be admissible against Gilbert at a separate trial for the single count

10

against him. "[I]n joint trials the court must consider, and remain particularly sensitive to the possibility that the prejudicial effect of evidence admissible only as to only one or a few defendants may have a 'spillover' effect on the jury's consideration of the government's case against defendants to whom the evidence does not apply." *United States v. Briscoe*, 896 F.2d 1476, 1498 (7th Cir. 1990). If the evidence against one defendant creates an unacceptably high inference of wrongdoing against another defendant—such that cautionary instructions will not suffice—the district court should either exclude the evidence or sever the trials. *Id.* Although juries are presumed capable of sorting through the evidence and following instructions to give separate consideration to each defendant, *see United States v. Hardin*, 209 F.3d 652, 664 (7th Cir. 2000), it is too much to ask the jury in this case to ignore the vast quantity of evidence in this case that is not relevant to the one count in which Gilbert is charged.

This is the "classic situation" where a failure to sever may prejudice Gilbert: a joint trial may lead to the admission of damaging evidence that would be inadmissible if the defendant were being tried alone. *See United States v. Thornton*, 197 F.3d 241, 255 (7th Cir. 1999). Gilbert is not charged as a member of the alleged five-year fraudulent scheme of Count One, and he is only mentioned briefly in the 48 paragraphs and 19 pages constituting Count One. Although evidence of one participant's actions in furtherance of a scheme to defraud is admissible against the other participants in that scheme, it is significant that Gilbert is not charged in Count One. In *United States v. Warner*, the Seventh Circuit rested its affirmance of the district court's decision not to sever on its finding that the evidence against the moving defendant could have been introduced against him in his own trial because it was part of the conspiracy and scheme "charged against both defendants." 498 F.3d 666, 701 (7th Cir. 2007)

11

(citing *United States v. Adeniji*, 221 F.3d 1020, 1027 (7th Cir. 2000)). Here, by contrast, because Gilbert is not charged in the scheme in Count One and his only alleged link to the scheme relates to one illegal act, much of the evidence as to the other acts alleged in the Second Superseding Indictment may be inadmissible at a separate trial on the single count against Gilbert.

Finally, the traditional arguments in favor of a joint trial do not apply here. Most cases reiterating the policy favoring joint trials involve conspiracy cases where "[t]he vast majority, if not all, of the evidence admitted in the joint trial would have been admissible had [the defendant] been tried alone." *United States v. Souffront*, 338 F.3d 809, 831 (7th Cir. 2003); *see also Zafiro*, 506 U.S. at 537; *United States v. Goodwin*, 496 F.3d 636, 644 (7th Cir. 2007); *United States v. Carrillo*, 435 F.3d 767, 778 (7th Cir. 2006). That is not the case here. Not only is there no conspiracy charged, but Gilbert is not charged in the overall fraudulent scheme tying the Indictment together. Therefore, much of the evidence that the government will seek to admit against Troutman and Boone may not be admissible against Gilbert in a separate trial. While the government argues that there are several common witnesses who would be burdened by having to testify at two trials (R. 104, Gov't Consolidated Resp. at 16), in light of the disparity in quantity and quality charges against Gilbert and his co-Defendants, the Court disagrees that there would be a "substantial" amount of evidentiary overlap if Gilbert were tried separately.

In addition, severance in this case would only minimally lengthen trial time. Gilbert estimates—and the government does not disagree—that the length of his separate trial would likely not exceed eight days. (R. 86, Mem. in Supp. of Mot. to Sever at 12-13.) Moreover, the trial of Troutman and Boone will be shortened by the elimination of Gilbert from the joint trial, and the likely multitude of evidentiary objections and complicated jury instructions he would

bring for the reasons discussed above. Accordingly, the Court finds that Gilbert has shown that a joint trial appears to prejudice him under Rule 14, and the Court will use its discretion to sever the trial. The Court declines to reach Gilbert's additional arguments for severance.[6]

## CONCLUSION

Trial judges have the inherent authority, and duty, to actively manage criminal trials. *See Warner*, 506 F.3d at 521-23 (Posner, J. and Kanne, J., Williams, J., dissenting). As this Court has previously noted, it has always been our policy to proactively manage criminal trials to ensure the maximum fairness to each defendant. *See United States v. Delatorre*, 522 F. Supp. 2d 1034, 1049 (N.D. Ill. 2007). Even with the clearest limiting instructions, it would be unreasonable to expect the jury to be able to separate the evidence as to Gilbert from the additional fourteen counts and the alleged overarching scheme in which he is not charged. Accordingly, Gilbert's motion for severance is granted under Rule 14.

ENTERED: /s/

Judge Ruben Castillo
United States District Court

Dated: April 24, 2008

---

[6] The Court notes that Gilbert's argument that he would be prejudiced by his inability to examine Troutman at a joint trial is without merit. The mere possibility of a co-defendant's exculpatory testimony is an insufficient reason for severance. *United States v. Studley*, 892 F.2d 518, 525 (7th Cir. 1989). A "mere possibility" of Troutman's testimony, however, is all Gilbert has presented as Troutman may exercise her Fifth Amendment right not to testify even if Gilbert were tried separately. In addition, contrary to Gilbert's argument (R. 109, Gilbert Reply at 25), he would not be allowed to ask the jury to draw inferences from Troutman's refusal to answer questions even if he were tried separately. *See United States v. Mabrook*, 301 F.3d 503, 507 (7th Cir. 2002) (holding that "we have never found that it is permissible for a jury to make an inference from the invocation of a witness's assertion of the Fifth Amendment").