UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No. 07 CR 5 |
| ) | |
| ARENDA TROUTMAN, STEVEN BOONE, ) | Judge Ruben Castillo |
| and VINCENT GILBERT, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

The Second Superseding Indictment ("Indictment") alleges that while Defendant Arenda Troutman ("Troutman") was Alderman for the City of Chicago's 20th Ward, she enlisted the help of Defendants Steven Boone ("Boone") and Vincent Gilbert ("Gilbert") to defraud the City by soliciting and accepting cash from certain individuals in return for her support of those individuals' real estate projects. (R. 142, Indictment.) On April 24, 2008, this Court severed Gilbert's trial from his two co-Defendants after finding that a joint trial would prejudice him under Federal Rule of Criminal Procedure 14. *See United States v. Troutman*, 546 F. Supp. 2d 610, 618 (N.D. Ill. 2008). Gilbert is charged only in Count Twelve of the fifteen-count Indictment, and this Court determined that "[e]ven with the clearest limiting instructions, it would be unreasonable to expect the jury to be able to separate the evidence as to Gilbert from the additional fourteen counts and the alleged overarching scheme in which he is not charged." *Id.*

Presently before the Court are four motions filed by Gilbert: (1) a motion to redact Count Twelve so that it omits all reference to Count One of the Indictment (R. 154, Mot. to Redact); (2) a motion to dismiss Count Twelve of the Indictment (R. 155, Mot. to Dismiss); (3) a motion for

an order directing the government to preserve and produce notes taken by government agents and attorneys during witness interviews (R. 164, Mot. to Preserve and Produce Notes);[1] and (4) a motion for a bill of particulars as to Count Twelve of the Indictment (R. 157, Mot. for Bill of Particulars).

## THE SECOND SUPERSEDING INDICTMENT

Although Gilbert is only charged in Count Twelve, the Court takes judicial notice of the remaining Counts of the Indictment as they relate to Gilbert. *See Palay v. United States*, 349 F.3d 418, 425 n. 5 (7th Cir. 2003) (district court may take judicial notice of matters in the public record); *see also Beam v. Gonzales*, 548 F. Supp. 2d 596, 601 (N.D. Ill. 2008) (taking judicial notice of indictment). Count One charges that Troutman:

> used her official position as the Alderman of the 20th Ward to solicit, directly and with and through others, and to obtain, for the benefit of herself and others, including defendant Steven Boone and Vincent Gilbert, with their knowledge and participation, payments and other things of value from persons who were involved in real estate work, with the implicit and explicit understanding that, without such payments and other things of value, her support for land use requests, zoning changes, alley access, sale of City-owned real estate, and other requests that required local government action would either not be forthcoming or would be delayed.

(R. 142, Indictment, Count One, ¶ 3.) The persons allegedly solicited in this scheme include those identified as Individuals A, B, C, D, E, F, G, H, and I. (*Id.* ¶¶ 1, 35, 40.)

Gilbert, while not accused in the alleged fraudulent scheme, is alleged to have worked with Troutman to illegally solicit money and partnerships from Individual I, a real estate

---

[1] Docket entry 164 is listed as a "corrected version" of this original motion, filed as docket entry 156.

developer.[2] (*Id.* ¶ 40.) The Indictment alleges that Gilbert was "an acquaintance of Troutman who had little, if any, real estate development experience." (*Id.*) Nevertheless, in approximately late 2004 or early 2005, Troutman "indicated, directly and indirectly, that she would support a particular real estate project of Individual I only if Individual I worked on the project with Gilbert." (*Id.*) Gilbert allegedly presented Individual I with a consulting contract whereby Individual I would pay Gilbert a $5,000 retainer, but, according to the Indictment, they did not enter into the contract at that time. (*Id.* ¶ 41.)

Subsequently, on or about July 1, 2005, as part of his cooperation with the government, Individual I entered into the consulting contract with Gilbert and paid him a $5,000 fee. (*Id.*) At that time, Gilbert allegedly told Individual I, "when I'm happy, the Alderman's happy. I'm happy now because she actually directed at me to you so I never thought it would be like pulling teeth." (*Id.* ¶ 42.) Individual I, however, allegedly refused to make Gilbert a partner on a real estate project, and Gilbert responded "I can make this project go, otherwise I think this project is in jeopardy." (*Id.* ¶ 43.) Nevertheless, Gilbert allegedly made a presentation to Troutman and her economic development board on behalf of Individual I, but they did not support Individual I's real estate project. (*Id.* ¶ 44.) When Individual I expressed displeasure with Gilbert, Gilbert allegedly warned Individual I, "don't piss me off because you still have property . . . in that ward." (*Id.*) Individual I then allegedly asked Gilbert to arrange a meeting with Troutman to

---

[2] The Indictment also briefly alleges that Troutman tried to induce Individual H to collaborate with Gilbert on "one occasion that involved the residential building project along 63rd Street referenced in paragraph 34 above." (*Id.* ¶ 40.) This project involved the alleged solicitation of Individual H in December 2005, but the Indictment provides no detail as to Gilbert's involvement with Individual H, and neither party discusses the allegations regarding Individual H in their briefs. (*Id.* ¶¶ 34-35.)

3

discuss the project. (*Id.*) At a meeting that occurred in early December 2005, Troutman allegedly told Individual I that his relationship with Gilbert "didn't seem to work out," and suggested that Individual I could work instead with Troutman's brother. (*Id.* ¶ 45.)

Count Twelve of the Indictment charges Troutman and Gilbert with violating 18 U.S.C. § 1951 (the "Hobbs Act") and 18 U.S.C. § 2 when, in approximately late 2004 or early 2005 until early 2006, they "knowingly attempted to commit extortion . . . in that they attempted to obtain property, namely $5,000 as part of a financial arrangement related to real estate development projects, from Individual I, with Individual I's consent induced under color of official right, and by the wrongful use of fear of economic harm." (R. 142, Indictment, Count Twelve.) Count Twelve incorporates paragraph 1 of Count One, which sets out the roles and identities of the players in the overarching scheme charged in the Indictment. (R. 142, Indictment, Count Twelve, ¶ 1.)

On August 6, 2008, Defendant Troutman entered a guilty plea to Counts One and Thirteen of the Indictment. (R. 171.)

## ANALYSIS

### I. Motion to Dismiss Count Twelve

Gilbert argues that Count Twelve should be dismissed because it: (1) fails to state an offense; (2) fails to adequately inform Gilbert of the nature of the charge so that he may prepare his defense; (3) is insufficient to allow Gilbert to plead the judgment as a bar to future prosecutions; and (4) is duplicitous in that it alleges two or more offenses in the same count. (R. 165, Mem. in Supp. of Mot. to Dismiss at 1-2.) "The Fifth Amendment guarantee of the right to indictment by a grand jury, its protection against double jeopardy, and the Sixth Amendment

guarantee that a defendant be informed of the nature of the charges against him establish the minimum requirements for an indictment." *United States v. Fassnacht*, 332 F.3d 440, 444-45 (7th Cir. 2003). An indictment is deemed sufficient if it: "(1) states the elements of the offense charged; (2) fairly informs the defendant of the nature of the charge so that he may prepare a defense; and (3) enables him to plead an acquittal or conviction as a bar against future prosecutions for the same offense." *United States v. Ramsey*, 406 F.3d 426, 429-30 (7th Cir. 2005). "[T]he sufficiency of an indictment is to be reviewed practically, with a view to the indictment in its entirety, rather than in any 'hypertechnical manner.'" *Fassnacht*, 332 F.3d at 445. Generally, an indictment that tracks the statutory language is sufficient, and should survive a motion to dismiss. *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000); *see also* Fed. R. Crim. P. 7(c) (requiring that indictment be "a plain, concise and definite written statement of the essential facts constituting the offense charged.")

Count Twelve alleges that during an approximately one-year period, Gilbert, together with Troutman, knowingly attempted to commit extortion in violation of 18 U.S.C. § 1951 (the Hobbs Act) when "they attempted to obtain property, namely $5,000 as part of their financial arrangement related to real estate development projects, from Individual I, with Individual I's consent induced under color of official right, and by the wrongful fear of economic harm." (R. 142, Indictment, Count Twelve, ¶ 2.) This appears to track the language contained in Section 1951, which states that: "Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, . . . in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both." 18

5

U.S.C. § 1951(a). Section 1951 defines extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). Count Twelve also alleges that the aforementioned violated 18 U.S.C. § 2, which makes one who aids and abets an offense against the United States liable as a principal.

The Indictment alleges the following facts: the time frame of the crime (from late 2004 to early 2006), the specific date Individual I allegedly entered into a consulting contract with Gilbert for $5,000 (July 1, 2005), the identity of the victim of the extortion (Individual I, a real estate developer with projects in the 20th Ward whose name has been given to Gilbert's counsel), the property extorted ($5,000), that the extortion occurred both under color of official right and by wrongful use of fear of economic harm, and that Gilbert's conduct violated the law. (R. 142, Indictment, Count One, ¶¶ 40-45; R. 104, Gov't's Consol. Resp. to Gilbert's Initial Mots. at 24.) The government argues that these allegations are sufficient to meet the pleading requirements set forth above.[3]

Nevertheless, Gilbert argues that Count Twelve fails to allege a Hobbs Act violation because: it does not state whether the charge is against Gilbert as a principal or "aider and abettor" of Troutman; it improperly contains two separate Hobbs Act claims—a violation "under color of official right" and by "the wrongful use of fear of economic harm;" it fails to allege a *quid pro quo* for the money or property allegedly extorted; it fails to clarify whether the extortion was merely attempted or completed; and it fails to show that Troutman and Gilbert's conduct was

---

[3] In its response brief to Gilbert's most recent motions, the government refers the Court to its response to Gilbert's earlier pretrial motions. (*See* R. 167, Gov't's Consol. Resp. to Gilbert's Pre-Trial Mots.; R. 104, Gov't's Consol. Resp. to Gilbert's Initial Mots.)

6

"wrongful." (R. 165, Mem. in Supp. of Mot. to Dismiss at 4.)

First, the Indictment properly alleges a Hobbs Act violation under both the "fear of economic harm" and "under color of official right" prongs. A violation of the Hobbs Act through "[t]he wrongful use of fear of economic harm is established by showing that the defendant preyed upon or exploited the victim's fear of economic harm." *United States v. Crockett*, 979 F.2d 1204, 1212 (7th Cir. 1992). The victim must be at risk of losing something to which he was legally entitled. *Id.* at 1212-13. Gilbert argues that Count Twelve fails to state a claim for violation of the Hobbs Act under the general rule that in a multi-count indictment "each count is regarded as if it was a separate indictment." *United States v. Conley*, 291 F.3d 464, 471 (7th Cir. 2002) (internal quotations omitted). Here, the language of Count Twelve tracks the language of the Hobbs Act, which is generally sufficient to survive a motion to dismiss. *See Smith*, 230 F.3d at 305.

In addition, the Court looks to the Indictment "in its entirety" to determine the sufficiency of the charge. *Fassnacht*, 332 F.3d at 445. In Count One, the Indictment alleges additional facts regarding the Hobbs Act "wrongful use of fear of economic harm" charge. Gilbert allegedly stated: "I can make this project go, otherwise I think this project is in jeopardy." (*Id.* ¶ 43.) At another point, Gilbert allegedly warned Individual I not to "piss me off because you still have property" in Troutman's ward, apparently threatening some of Individual I's existing real estate deals. (*Id.* ¶ 44.) Moreover, the Indictment alleges that Individual I paid Gilbert $5,000 for a consulting contract that Individual I did not want, and that Gilbert was not qualified for, out of fear that Troutman would not otherwise support Individual I's real estate project. (R. 142, Indictment, Count One, ¶¶ 40-42.) Where a consulting fee paid by a victim to the defendant

7

"bore no rational relation to any service" provided by the defendant, fear of economic harm for Hobbs Act purposes can be shown. *See United States v. Sturman*, 49 F.3d 1275, 1281-82 (7th Cir. 1995). Thus, the Indictment sufficiently alleges that Gilbert committed extortion under the Hobbs Act by wrongfully inducing fear of economic harm.

In addition, the Indictment properly alleges a Hobbs Act violation "under color of official right." An individual violates the "color of official right" prong of Section 1951(b)(2) when he encourages or accepts a payment knowing that it was "prompted by the hope that the official will be influenced in the exercise of his or her powers." *United States v. Stodola*, 953 F.2d 266, 271 (7th Cir. 1992). Private persons may be liable under this prong if "they act in coordination with public officers," as Gilbert is alleged to have done. *United States v. McClain*, 934 F.2d 822, 830 (7th Cir. 1991). As with the fear of economic harm allegation, Count Twelve of the Indictment tracks the language of the Hobbs Act as to the alleged violation under "color of official right." *See Smith*, 230 F.3d at 305. Moreover, viewing the Indictment "in its entirety," *Fassnacht*, 332 F.3d at 445, the Court finds that the Indictment sufficiently alleges that Gilbert committed or attempted to commit extortion under the Hobbs Act under color of official right. Specifically, the Indictment alleges that Gilbert told Individual I that "when I'm happy, the Alderman's happy." (R. 142, Indictment, Count One, ¶ 42.) Gilbert was allegedly "happy" because Individual I paid him the $5,000 consulting fee. (*Id.*) Troutman also allegedly indicated to Individual I that "she would support a particular real estate project of Individual I only if Individual I worked on the project with Gilbert." (*Id.*) Contrary to Gilbert's arguments, these allegations adequately charge a *quid pro quo*: Troutman's approval of certain real estate development projects in exchange for the $5,000 or a partnership with Individual I for Gilbert.

8

Further, Count Twelve does not violate Gilbert's Fifth or Sixth Amendment rights by alleging two types of Hobbs Act violations. While Federal Rule of Criminal Procedure 8(a) requires that an indictment provide a "separate count for each offense," the Court has found no precedent indicating that an indictment may not charge the two types of Hobbs Act violations as one offense within the same count. *See, e.g., Stodola*, 953 F.2d at 271 (upholding jury verdict on count alleging Hobbs Act extortion by both fear of economic harm and under color of official right); *United States v. Warner*, 292 F. Supp. 2d 1051, 1066 (N.D. Ill. 2003) (holding that count alleging both types of Hobbs Act violations against private citizen working with public official was sufficient to avoid dismissal). The government represents that where the Indictment alleges that Gilbert violated the Hobbs Act by acting under color of official right and by using the fear of economic harm, it alleges only one crime carrying one punishment. (R. 104, Gov't's Consol. Resp. to Gilbert's Initial Mots. at 26). As the government seeks to charge Gilbert with only one Hobbs Act violation, Count Twelve can in essence be read as "an in the alternative" pleading; that Gilbert has either committed extortion under color of official right or by wrongful use of fear of economic harm.[4]

Gilbert also argues that Count Twelve should be dismissed because it fails to allege whether the government is seeking to hold him liable as a principal or as an aider and abettor in the Hobbs Act violation, and thus holds open the possibility of a duplicitous charge that he is guilty as both a principal and aider and abettor. (R. 165, Mem. in Supp. of Mot. to Dismiss at 4.) Count Twelve states a claim not only under the Hobbs Act, but also under 18 U.S.C. § 2, which

---

[4] Indeed, listing the Hobbs Act violations as one count may favor Gilbert, who could otherwise face charges for two separate offenses.

9

provides that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." 18 U.S.C. § 2(a). Whether Gilbert directly committed the alleged offense or aided and abetted it, he would be punishable as a principal under the law. Further, the government is only seeking to hold Gilbert liable for one crime, carrying one punishment. (R. 104, Gov't's Consol. Resp. to Gilbert's Initial Mots. at 26). Accordingly, Count Twelve could properly be read as alleging that Gilbert committed the attempted extortion, or, in the alternative, that he aided and abetted it. Thus, Count Twelve is neither duplicitous nor insufficient and will not be dismissed on this ground.

Gilbert also argues that Count Twelve fails to allege attempted extortion under the Hobbs Act because it is vague as to whether Gilbert actually obtained the $5,000 at issue or merely requested it. The plain language of the Indictment demonstrates the error in Gilbert's argument. It alleges that on or about July 1, 2005, Individual I paid Gilbert a $5,000 fee to serve in a consulting position for which Gilbert was not qualified. (R. 142, Indictment, Count One, ¶¶ 41-42.) To sufficiently allege attempted extortion under the Hobbs Act, the government must allege that Gilbert wrongfully used the fear of economic harm to obtain money or property from Individual I, and that their conduct affected interstate commerce. *United States v. Mitov*, 460 F.3d 901, 907 (7th Cir. 2006). For the reasons explained above, the Indictment sufficiently alleges these elements of a Hobbs Act violation.

Finally, Gilbert argues that the government has provided no "evidence" that Troutman was not legitimately using her office as Alderman. (R. 165, Mem. in Supp. of Mot. to Dismiss at 9-10.) Gilbert has the right "to know the offense with which he is charged, not to know the details of how it will be proved." *Fassnacht*, 332 F.3d at 446. The Indictment need not contain

every "factual nugget necessary for conviction. . . . Once the elements of the crime have been specified, an indictment need only provide enough factual information to enable the defendants to identify the conduct on which the government intends to base its case." *Id.* at 445-46. As explained above, the Indictment sufficiently alleges that Gilbert's and Troutman's actions were wrongful and in violation of the Hobbs Act. Accordingly, Gilbert's motion to dismiss the Indictment is denied.

## II.  Motion to Redact Count Twelve

Gilbert next moves to redact any mention of Count One contained in Count Twelve. The only mention of Count One is: "The allegations in paragraph 1 of Count One of this indictment are hereby realleged and incorporated as if fully set forth herein." (R. 142, Indictment, Count Twelve, ¶ 1.) Gilbert argues that the allegations in Count One are "surplusage" as to Gilbert or excludable under Federal Rule of Evidence 403 because it is prejudicial and would confuse the jury. (R. 173, Gilbert Reply to Mot. to Redact at 2.) Gilbert argues that because he is not charged in Count One, that Count should not be referred to by the Court or the government at Gilbert's separate trial. (R. 154, Mot. to Redact ¶ 3.)

Federal Rule of Criminal Procedure 7(d) allows the Court, on defendant's motion, to "strike surplusage from the indictment." Certain portions of Count One of the Indictment, however, are not mere surplusage. The Court agrees with the government that some of the contents of paragraph one, Count One, are relevant to the case against Gilbert, as it includes definitions, descriptions, and individuals' roles, as well as relevant rules and policies. The government is willing to consider limited redactions; however, Gilbert has not specified which portions of Count One he believes would be prejudicial to him at trial. The Court will give

11

Gilbert fourteen days to move for redaction of particular sections of paragraph one, Count One, that he believes are prejudicial. If the government disagrees with Gilbert's proposed redactions, the Court will give the government ten days to respond in writing, after which the Court will rule on whether particular redactions are appropriate. (R. 167, Gov't's Consol. Resp. to Gilbert's Pre-Trial Mots. at 7.) Further, to the extent the government seeks to offer evidence at trial regarding certain facts alleged in Count One, the Court will address whether evidence should be excluded under Rule 403 on an individual basis as the issues arise.

## III. Motion for a Bill of Particulars

Gilbert next moves for a bill of particulars to correct many of the purported deficiencies in the Indictment that he alleges above. Gilbert argues that he is entitled to a bill of particulars identifying: (1) the specific dates between "late 2004 or early 2005" and "early 2006" when the attempted extortion of Individual I allegedly occurred; (2) the "specific conduct" of Defendants Troutman and Gilbert that allegedly induced Individual I's consent "under color of official right" and "by the wrongful use of fear of economic harm;" (3) the specific "financial arrangement related to real estate development projects" involving Individual I; (4) the "specific property described as $5,000" or other property that Troutman and Gilbert allegedly attempted to obtain; (5) the specific official act or acts Troutman and Gilbert agreed to perform in exchange for the property; (6) the actual economic loss feared by Individual I; and (7) the specific effect on commerce resulting from the alleged attempted extortion. (R. 157, Mot. for Bill of Particulars at 1-3.)

This Court has discretion to order the filing of a bill of particulars if an indictment does not adequately provide notice of the charges to allow a defendant to prepare for trial. *United*

12

*States v. Falcon*, 347 F.3d 1000, 1002 (7th Cir. 2003); *Fassnacht*, 332 F.3d at 446. The test for determining whether a bill of particulars should be granted is similar to the test for determining the general sufficiency of the indictment: "[W]hether the indictment sets forth the elements of the offense charged and sufficiently apprises the defendant of the charges to enable him to prepare for trial." *Fassnacht*, 332 F.3d at 446. An indictment which includes each of the elements of the offense charged, the time and place of the accused's conduct which constituted a violation, and a citation to the statute or statutes violated sufficiently apprises the defendant of the charges. *Id.* (internal citations omitted). "[A] bill of particulars is not required when information necessary for a defendant's defense can be obtained through some other satisfactory form," such as through discovery or the indictment. *Id.* (internal citations omitted); *see also United States v. Canino*, 949 F.2d 928, 949 (7th Cir. 1991).

The government argues that the motion should be denied because the indictment sufficiently informs Gilbert of the charge, and the government has already turned over virtually all of the information it has concerning the charge against him in this case. (R. 167, Gov't's Consol. Resp. to Gilbert's Pre-Trial Mots. at 5-6.) As explained above, a defendant is only entitled to know the offense with which he is charged, not all the details of how it will be proved. *Fassnacht*, 332 F.3d at 446. As of November 16, 2007, the government had provided Gilbert with thousands of pages of materials, including recordings and draft transcripts of recorded conversations in which defendant Gilbert was a participant, agents' reports of interviews, and Gilbert's own statements given to law enforcement authorities. (R. 104, Gov't's Consol. Resp. to Gilbert's Initial Mots. at 2-3) In addition, nearly all the grand jury transcripts of testimony by witnesses the government may call at trial have been tendered to Gilbert. (*Id.*) The government

13

represents that "[t]he materials that defendant[] seek—to the extent it is known—are contained in the materials tendered to counsel, including the reports, CD-Roms, and transcripts." (R. 104, Gov't's Consol. Resp. to Gilbert's Initial Mots. at 3.)

As in *Fassnacht*, the government in this case provided the defendants with extensive pretrial discovery, "thus further obviating the need for a bill of particulars." *Fassnacht*, 332 F.3d at 446. The "relevant information" that Gilbert requests, "such as details of the alleged criminal acts, was available in the indictment, criminal complaint, and available affidavits, or could have been obtained through discovery." *United States v. Redd*, No. 05-3311, 2006 WL 319278, at *1 (7th Cir. Apr. 27, 2006). Given the general sufficiency of the indictment, discussed above, and because the information Gilbert requested was available in other forms, the Court denies the motion for a bill of particulars.

### IV. Motion for an Order Directing the Government to Preserve and Produce Notes

Finally, Gilbert seeks a Court order directing the government to preserve and produce "all original notes prepared by law enforcement or government investigator(s) contemporaneous with any and all interviews of Defendant Gilbert, as well as any and all government witnesses or prospective witnesses as to Gilbert." (R. 164, Mot. to Preserve and Protect Notes.) Gilbert argues that the notes prepared by the agent or prosecutor are discoverable on several grounds: (1) as discovery of a defendant's statements under Federal Rule of Criminal Procedure 16(a)(1)(A); (2) as discovery of statements or reports of prospective government witnesses under Fed. R. Crim P. 26.2 or 18 U.S.C. § 3500 (the Jencks Act); (3) as exculpatory material under *Brady v. Maryland*, 373 U.S. 83 (1963); or (4) as material affecting the credibility of a witness under *Giglio v. United States*, 405 U.S. 105 (1972). (R. 164, Mot. to Preserve and Protect Notes at 2.)

14

Federal Rule of Criminal Procedure 16(a) provides, in relevant part, that upon a defendant's request, the government must disclose to the defendant: (A) the substance of any relevant oral statement made by the defendant in response to interrogation by a government agent, if the government intends to use the statement at trial; (B)(i) any relevant written or recorded statement by the defendant; (B)(ii) the portion of any written record containing the substance of any relevant oral statement made by the defendant in response to interrogation by a government agent; and (B)(iii) the defendant's recorded testimony before a grand jury relating to the charged offense. Fed. R. Crim. P. 16(a)(1). Federal Rule of Criminal Procedure 26.2 tracks the language of the Jencks Act, requiring production of a witness's statement, defined as "(1) a written statement that the witness makes and signs, or otherwise adopts or approves; (2) a substantially verbatim, contemporaneously recorded recital of the witness's oral statement that is contained in any recording or any transcription of a recording; or (3) the witness's statement to a grand jury, however taken or recorded, or a transcription of such a statement." Fed. R. Crim. P. 26.2(f); *see also* 18 U.S.C. § 3500(e).

The government satisfies the requirements of Rule 16 if it turns over a written report that accurately reflects all of the information contained in an agent's original notes but does not deliver the notes themselves to the defendant. *United States v. Coe*, 220 F.3d 573, 583 (7th Cir. 2000) (citing *United States v. Muhammad*, 120 F.3d 688, 699 (7th Cir. 1997)); *see also United States v. Walker*, 272 F.3d 407, 417 (7th Cir. 2001) (district court did not abuse its discretion in refusing to order the disclosure of handwritten notes where the government had disclosed a typewritten report that accurately summarized the notes). Likewise, to the extent that the typewritten notes accurately reflect the agents' handwritten notes of the interviews, the typewritten notes

sufficiently provide exculpatory material under *Brady v. Maryland*, 373 U.S. 83 (1963) and witness credibility material under *Giglio v. United States*, 405 U.S. 105 (1972). Moreover, agent notes, even including jottings by the testifying witnesses, need not be produced under the Jencks Act if they are not a full transcription of a witness's statement. *See United States v. Oruche*, 484 F.3d 590, 598 (D.C. Cir. 2007).

The government represents that it has already instructed its agents to preserve all drafts of their interview notes and investigative reports. (R. 167, Gov't's Consol. Resp. to Gilbert's Pre-Trial Mots. at 2-3.) Therefore, Gilbert's motion is denied as moot as to the preservation of the notes, and to the extent the government has not ordered the preservation of the notes, the Court orders that they be preserved. The government argues, however, that it should not have to produce these notes because "to a very large extent, such notes are not discoverable." (R. 167, Gov't's Consol. Resp. to Gilbert's Pre-Trial Mots. at 2-3.)

The government has produced final, typewritten copies of the notes from the interviews of Gilbert and other witnesses. (*Id.* at 3-5.) The government argues that it has produced all of the Rule 16, Jencks Act, *Brady*, and *Giglio* material in discovery, including in the final copies of the interview notes. (*Id.*) Gilbert, however, argues that the typewritten memoranda of interviews which were produced "do not fully and accurately reflect the complete interviews" of Gilbert, and may not accurately reflect the interviews of Individuals H, I, J, or other witnesses. (R. 172, Gilbert Reply to Mot. to Preserve and Produce Notes at 2.) To resolve this dispute, the Court will review the agents' notes *in camera* to determine whether the written reports the government has produced reflect all of the information contained in an agent's original notes. Accordingly, the Court directs the government to produce the agents' handwritten notes, together with the

16

produced reports purportedly reflecting those notes. Gilbert's motion to produce these notes is thus dismissed, and the Court will issue an order in accordance with its *in camera* findings.

## CONCLUSION

For the reasons discussed above, Gilbert's motion to dismiss (R. 155), motion to redact (R. 154), and motion for a bill of particulars (R. 157) are denied. Gilbert has fourteen days to move for the redaction of particular sections of paragraph one, Count One, if he believes they are prejudicial to him. If the government disagrees with Gilbert's proposed redactions, the Court will give the government ten days to respond in writing, after which the Court will rule on whether particular redactions are appropriate

Gilbert's motion to produce the notes taken during witness interviews is denied in part and granted in part. (R. 164.) Gilbert's motion is denied as moot as to the preservation of the notes, and to the extent the government has not ordered the preservation of the notes, the Court orders that they be preserved. The Court further orders the government to present the agents' handwritten notes, together with the produced reports purportedly reflecting those notes, to this Court for *in camera* review within fourteen days.

ENTERED: *[signature]*

Judge Ruben Castillo
United States District Court

Dated: August 21, 2008